IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARLEIS TROVER, as Personal Representative of the Estate of Donald Gaddis, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:18-cv-1464-DWD |
| | ) |
| CRAIG OGLESBY and DUSTIN KELLEY, | ) ) |
| | ) |
| Defendants. | ) |

MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Defendants' Motion for Summary Judgment and Supporting Memorandum. (Doc. 102). Plaintiff filed an Amended Response in Opposition to the Motion for Summary Judgment. (Doc. 104-1). Thereafter, Defendants filed a Motion for Leave to File an Untimely Reply in Support of the Motion for Summary Judgment *instanter*, which is now **GRANTED**, without objection from Plaintiff, for good cause and excusable neglect shown by Defendants. *See* Fed. R. Civ. P. 6(b)(1); (Docs. 107 & 109).[1] For the reasons explained below, the Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND

In this case, the parties largely agree on the underlying factual circumstances. Plaintiff indicates: "Defendants' able counsel has offered a factual summary of the case,

---

[1]Plaintiff states she "does not believe that exceptional circumstances exist which warrant the filing of a Reply, but…out of an abundance of caution, Plaintiff has no objection to the Court considering the arguments so that the record will be complete in the event that any appeal is taken." (Doc. 109, pgs. 1-2).

the bulk of which Plaintiff does not and cannot object to." (Docs. 102, pgs. 2-4; 104-1, pg. 3). Accordingly, the Court begins with the areas of agreement between the parties.

The former Plaintiff, Donald Gaddis, who died on May 20, 2022, was a respondent in proceedings for an order of protection. (Doc. 98, pg. 2). Former Defendant Bryan DeMattei, who is a police officer for the City of Marion, Illinois, was a witness in that proceeding. (Doc. 98, pg. 2). In March 2018, "Gaddis was driving on the street in front of DeMattei's house, and Gaddis noticed DeMattei's car in the driveway." (Doc. 98, pg. 2). DeMattei was outside of the home with another officer, Sam Ward, and both were off duty. (Doc. 98, pg. 2). Gaddis drove onto DeMattei's driveway to discuss DeMattei's testimony in the order of protection proceedings. (Doc. 98, pg. 3).

Defendants Oglesby and Kelley, who are police officers for the Williamson County, Illinois, Sheriff's Office, were separately dispatched to DeMattei's home, where Gaddis was refusing to leave. (Docs. 98, pgs. 2-3; 102-1, pgs. 14-15. When Defendant Oglesby arrived on scene, DeMattei and Ward were restraining Gaddis on the ground. (Docs. 98, pg. 3; 102-1, pg. 38). Defendant Oglesby found Gaddis had trespassed on DeMattei's real property; therefore, Defendant Oglesby arrested Gaddis and placed him in the back of a police car. (Doc. 102-1, pgs. 22, 24-25).

Before towing Gaddis's car due to his arrest, Defendant Kelley conducted an inventory search of that car. (Docs. 98, pg. 3; 102-1, pgs. 27, 29; 102-2, pg. 7; 102-3). Pursuant to Williamson County Sheriff's Office Policy No. 0-28, which pertains to motor vehicle inventories, an inventory search is "designed to protect motor vehicles and their contents while in policy custody; to protect the agency against claims of lost, stolen or

damaged property; and to protect Sheriff's Office personnel and the public against injury or damaged property due to hazardous materials or substances that may be in the vehicle." (Doc. 102-4, pg. 9). Policy No. 0-28 states an inventory search may be conducted without a warrant or probable cause when a car's driver has been arrested. (Doc. 102-4, pg. 10). Generally, the inventory search must occur at the location where the car is seized. (Doc. 102-4, pgs. 10, 13). All items of value must be itemized in detail on a Vehicle Tow and Inventory Form. (Doc. 102-4, pgs. 10, 13). Under Policy No. 0-29, an impoundment is required if "a subject is arrested for purposes of incarceration and…[t]he vehicle was used in a crime," such as a trespass. (Doc. 102-4, pg. 14).

During the inventory search, Defendant Kelley found "some type of paperwork" or "misc paper work," *i.e.*, a notebook, on the passenger-side floorboard or seat of the car. (Docs. 98, pg. 3; 102-2, pgs. 7-8, 13; 102-3.[2] Defendant Kelley also identified golf clubs, a black bag, a brown bag, headphones, jumper cables, a flashlight, clothes, mace, speed loaders for a revolver, and Jordan tennis shoes. (Doc. 102-3). He signed a Williamson County Sheriff's Office Vehicle Impoundment and Inventory Record that identified this property. (Doc. 102-3). Defendant Kelley briefly looked inside the notebook during the inventory search of the car. (Doc. 102-2, pg. 8). He explained the process as follows:

> When I opened it, I would have been making sure there was nothing of value in there. If there's…something valuable like cash or something like that, we're not going to leave it in the vehicle in an unsecured position. So I would have opened it briefly, made sure there was no valuable items, what I believe to be valuable items.

* * *

---

[2]The Court notes the notebook has also been referred to as a journal or miscellaneous papers.

I wouldn't say I read it. I briefly looked at it to make sure it wasn't anything of value or any, like, bank numbers or anything of value that could affect Mr. Gaddis's loss of some type of value.

(Doc. 102-1, pgs. 7-8).

Defendant Kelley may have placed the notebook on the hood of the car. (Doc. 102-2, pgs. 9-10, 24). Otherwise, he testified, "I wouldn't say I removed it" from the car. (Doc. 102-2, pg. 9). Defendant Kelley "absolutely [did] not" take the notebook inside DeMattei's house. (Doc. 102-2, pg. 9). When asked if he ever took the notebook to DeMattei so he could read its contents, Defendant Kelley initially answered, "No, sir. Not that I would recall." (Doc. 102-2, pg. 9). After a follow-up question, Defendant Kelley clarified his answer, stating "I would not have carried the notebook over to his person for him to look at it. No, sir, I would not have done that." (Doc. 102-2, pg. 10). Further, at no time did Defendant Kelley recall DeMattei or Ward interacting with Gaddis's notebook or fooling around in his car. (Doc. 102-2, pgs. 24-25). That said, Defendant Kelley also did not know how DeMattei could have referenced statements contained in Gaddis's notebook in subsequently filed no-contact petitions in the Illinois state courts. (Doc. 102-2, pg. 11).

Defendant Oglesby testified that he did not conduct the inventory search, and he did not recall anyone other than Defendant Kelley inventorying Gaddis's car. (Doc. 102-1, pg. 30). He observed an empty holster in the trunk of the car, but he had no recollection of any miscellaneous paperwork. (Docs. 102-1, pgs. 31-32; 102-2, pg. 13). As such, Defendant Oglesby testified that he did not show any paperwork or a notebook to DeMattei in his house. (Doc. 102-1, pgs. 32, 40). He did not recall DeMattei ever entering

4

Gaddis's car. (Doc. 102-1, pg. 40). Defendant Oglesby was also unaware of any conversations that Defendant Kelley had with DeMattei, and Defendant Oglesby did not observe Defendant Kelley perusing a notebook in any manner. (Doc. 102-1, pgs. 17, 32). In any event, Defendant Oglesby testified that he would not have read any written materials contained inside the car during the inventory search. (Doc. 102-1, pg. 36).

Although the parties largely agree on these facts, Plaintiff challenges two statements of material fact asserted by Defendants. (Docs. 102, pgs. 4, 8; 104-1, pg. 3). In particular, she contests Defendants' statement of material fact that Defendant "Kelley denied ever carrying the notebook over to DeMattei for him to look at." (Docs. 102, pgs. 4, 8; 104-1, pg. 3). Likewise, Plaintiff contests Defendants' statement of material fact that "[n]either…Kelley nor…Oglesby took the notebook into DeMattei's home…[and] Oglesby never went into DeMattei's home." (Docs. 102, pgs. 4, 8; 104-1, pg. 3).

The primary evidentiary basis for Plaintiff's argument is the deposition of DeMattei. He testified that the factual basis for the subsequently filed no-contact petitions came from "what I saw in the notebook." (Doc. 103-1, pg. 11). DeMattei noted he was off-duty and he did not inventory the car on the date of the incident; however, the notebook "was presented to…[him] by a deputy." (Doc. 103-1, pgs. 11, 15). DeMattei confirmed, other than a supervisory officer from the Williamson County Sheriff's Office, Jeffrey Moore, who did not leave his vehicle on the date of the incident, Oglesby, Kelley, and Ward (off duty) were the only officers on scene. (Docs. 102-5, pgs. 15, 25; 103-1, pgs. 11-12). Even so, DeMattei did "not remember specifically" who showed him the notebook. (Doc. 103-1, pg. 12). DeMattei conceded Lieutenant Moore could not have shown him the

notebook. (Doc. 103-1, pg. 12). DeMattei did not know if it could have been Defendant Oglesby or Defendant Kelley. (Doc. 103-1, pg. 12). DeMattei also did not know if he was shown the notebook by another unidentified person or officer. (Doc. 103-1, pgs. 12-13).

DeMattei did remember what he was told when presented with the notebook. (Doc. 103-1, pg. 13). He "remember[ed] him saying that my name was in" the notebook. (Doc. 103-1, pgs. 13-14). The notebook was presented to him for only a matter of minutes in the kitchen of his home. (Doc. 103-1, pgs. 13-14). DeMattei stated, "[t]he notebook was laid on my kitchen island and he said my name was in it and directed my attention towards it." (Doc. 103-1, pg. 14). He did not remember if the unidentified officer directed him to a particular page or just to the notebook. (Doc. 103-1, pg. 14). DeMattei clarified that the unidentified officer came into his house with the notebook. (Doc. 103-1, pg. 14).

Similarly, Lieutenant Moore testified that he was not aware of any inventoried items, such as the notebook, being placed into evidence. (Doc. 102-5, pg. 30). When asked if Defendant Kelley had the authority to read the notebook during the inventory search, Lieutenant Moore stated, "I'm sure that he would have went through the miscellaneous paperwork to make sure that there weren't any narcotics or anything like that. I can't testify on what…his mindset was at the time." (Doc. 102-5, pg. 31). Over the objection of the Defense, Lieutenant Moore indicated DeMattei, as an off-duty officer, would not have the authority to review Gaddis's notebook or read its content. (Doc. 102-5, pg. 35). It was Lieutenant Moore's understanding that "nothing ha[d] been broken as far as the policies and procedures of the Williamson County Sheriff's Office." (Doc. 102-5, pgs. 40-41).

As a result of these facts, Plaintiff filed an Amended Complaint (Doc. 98), alleging an illegal search and seizure under 42 U.S.C. § 1983 (Count I) and an illegal trespass to chattels under Illinois law (Count II). In Count I, Plaintiff alleges Defendants knew they lacked probable cause to search Gaddis's notebook or to share its contents with DeMattei. (Doc. 98, pgs. 3-4). Even if Defendants believed the car contained evidence relevant to the trespass charges for which he was arrested, Plaintiff states exigent circumstances did not permit a search of the notebook. (Doc. 98, pg. 4). Plaintiff also alleges Gaddis's car was impounded by the Williamson County Sheriff's Office, so a search warrant could have been obtained based on probable cause. (Doc. 98, pg. 4). In Count II, Plaintiff alleges Gaddis never gave Defendants consent to search his notebook. (Doc. 98, pg. 5). Gaddis allegedly sustained damages due to the trespass to his notebook. (Doc. 98, pg. 5).

## II. ANALYSIS[3]

Defendants seek summary judgment on both Counts I and II of the Amended Complaint. The Court may grant that relief if Defendants show there is no genuine dispute as to any material fact, such that they are entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *accord Driveline Systems, LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019) (quoting *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015); citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Assertions that a fact cannot be or is genuinely disputed must be supported by citations to the record. *See* Fed. R. Civ. P. 56(c)(1)(A). Alternatively, the assertions must be supported by a showing that the

---

[3]The Court notes that Plaintiff's responsive arguments, at times, are presented in an abbreviated form and are a bit disconnected from the organization of Defendants' Motion for Summary Judgment. The Court has done its best to discuss Plaintiff's responsive arguments where they are most applicable.

materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce evidence to support the fact. *See* Fed. R. Civ. P. 56(c)(1)(B).

If Defendants present evidence showing the absence of a genuine dispute of material fact, then the burden shifts to Plaintiff to provide evidence of specific facts creating a genuine dispute of material fact. *See Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Hudson Ins. Co. v. City of Chic. Heights*, 48 F.3d 234, 237 (7th Cir. 1995)). A genuine dispute of material fact exists if there is sufficient evidence for Plaintiff to receive a verdict. *See Driveline Systems*, 936 F.3d at 579 (quoting *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018), *reh'g denied* (Oct. 30, 2018)). Speculation about a material fact, unsupported by evidence, does not defeat summary judgment. *See Moje v. Fed. Hockey League, LLC*, 377 F. Supp. 3d 907, 920 (N.D. Ill. 2019) (citing *Sbika v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 721 (7th Cir. 2018); *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994)).

When considering a motion for summary judgment, the Court does not determine credibility, weigh the evidence, or decide which inferences to draw from the facts, as those tasks are within the province of a jury. *See Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (quoting *Johnson v. Advocate Health & Hospitals Corp.*, 892 F.3d 887, 893 (7th Cir. 2018)). Instead, based on the record evidence, the Court merely decides whether a genuine dispute of material fact requires a trial. *See id.* (quoting *Johnson*, 892 F.3d at 893). When doing so, the Court construes the evidence in a light most favorable to the nonmovant while avoiding the temptation of deciding one party's version of facts is more likely true than the other party's version of facts. *See id.* (quoting *Johnson*, 892 F.3d at 893).

Having outlined this procedural posture, the Court separately considers whether summary judgment is appropriate on Counts I or II of the Amended Complaint.

**B. Defendants' Alleged Illegal Search and Seizure under § 1983 (Count I)**

Now, Defendants argue Gaddis's car and notebook were the subject of a lawful inventory search by Defendant Kelley after Gaddis's arrest. (Doc. 102, pgs. 5, 7-8). Defendants also argue Defendant Oglesby lacked personal involvement in the inventory search, which is a necessary element to a § 1983 claim. (Doc. 102, pg. 8). They state Defendant Oglesby did not participate in the inventory search beyond merely "observing a gun holster in the trunk." (Doc. 102, pg. 8). Defendants also argue Defendant Oglesby did not recall viewing any paperwork on the passenger side of the car; however, even if he had, it was not Defendant Oglesby's practice to read written materials found during an inventory search. (Doc. 102, pg. 8). Also, in Defendants' view, there is no evidence that they were personally involved in reading or sharing the information contained in the notebook, except for Defendant Kelley's review "for bank numbers or other information of pecuniary value." (Doc. 102, pg. 5). In any event, Defendants argue they are entitled to summary judgment on Count I due to qualified immunity and, as to Defendant Kelley, the fact that Count I was filed outside the statute of limitations. (Doc. 102, pgs. 5, 9-10).

Plaintiff states "it is abundantly clear that in the process of 'inventorying' Gaddis's vehicle…one of [the Defendants]…not only read a journal[] belonging to Gaddis but also showed it to an off-duty Marion police officer, Bryan DeMattei." (Doc. 104-1, pg. 1). Plaintiff suggests it is obvious DeMattei was shown the notebook because he and another officer cited the notebook in subsequent no-contact petitions. (Doc. 104-1, pgs. 2-4). Since

9

Defendants deny showing the notebook to DeMattei, Plaintiff argues the question must be presented to a jury. (Doc. 104-1, pgs. 2, 4). Plaintiff also argues "Oglesby himself stated that it was against policy for even him to read the notebook, much less [to] permit DeMattei to read the notebook," so qualified immunity is unavailable. (Doc. 104-1, pg. 5).

Personal liability under § 1983 is contingent upon "the relevant official 'caus[ing] the constitutional deprivation at issue' or 'acquiesc[ing] in some demonstrable way in the alleged constitutional violation.' " *Gonzalez v. McHenry County, Illinois*, 40 F.4th 824, 828 (7th Cir. 2022) (quoting *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)). In other words, a lawsuit against individual defendants requires their personal involvement in the alleged constitutional deprivation. *See id.* (quoting *Palmer*, 327 F.3d at 594); *see also Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021) (recognizing, under § 1983, a government official is only liable for his or her own misconduct).

Further, the Fourth Amendment to the U.S. Constitution only forbids unreasonable searches and seizures. *See U.S. v. Ambriz-Villa*, 482 F. Supp. 3d 777, 781-82 (S.D. Ill. 2020) (quoting *Elkins v. U.S.*, 364 U.S. 206, 222 (1960)). It is well-settled that an inventory search is an exception to that Amendment's warrant and probable cause requirements. *U.S. v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (citing *U.S. v. Wilson*, 938 F.2d 785, 788 (7th Cir. 1991)); *accord U.S. v. Davis*, 627 F. Supp. 3d 983, 992 (N.D. Ind. 2022). A police officer who lawfully impounds a car may conduct an inventory search of its contents, as the police officer is responsible for the car and its contents while in his or her custody. *See U.S. v. Clinton*, 591 F.3d 968, 972 (7th Cir. 2010) (citing *Colorado v. Bertine*, 479 U.S. 367, 373 (1987)). Such "[a]n inventory search is lawful if (1) the individual whose

possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures." *U.S. v. Cartwright*, 630 F.3d 610, 614 (7th Cir. 2010) (citing *U.S. v. Jackson*, 189 F.3d 502, 508-09 (7th Cir. 1999)). The "procedures," which may be executed before the tow, protect the property and the police officer from charges that it was stolen, lost, or damaged. *See Cherry*, 436 F.3d at 772 (quoting *U.S. v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005)); *accord Davis*, 627 F. Supp. 3d at 983. An inventory search may not be used, however, "to rummage generally through a vehicle in order to discover incriminating evidence." *U.S. v. Reed*, 319 F. Supp. 3d 1112, 1121 (S.D. Ind. 2018) (citing *Florida v. Wells*, 495 U.S. 1, 4 (1990)); *see also U.S. v. Travis*, No. 21-cr-91, 2022 WL 832096, *5 (E.D. Wisc. March 21, 2022) ("An inventory search should comport with its purpose, *i.e.*, to 'produce an inventory' of the items in the car.").

Also, the decision to inventory, *i.e.*, to search, the car is analyzed as distinct from the decision to impound, *i.e.*, to seize, the car. *Cartwright*, 630 F.3d at 614 (quoting *U.S. v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996)); *accord Manning v. Sweitzer*, 891 F. Supp. 2d 961, 967 (N.D. Ill. 2012); *see also Stewart v. City of Fort Wayne*, No. 18-cv-286, 2020 WL 335418, *6 (N.D. Ind. Jan. 21, 2020) ("The Seventh Circuit has also explained that for an inventory search to be valid, the impoundment of the vehicle must be valid."). The impoundment itself is lawful, absent probable cause, if, for example, "the vehicle was left in a parking lot or parked illegally or no one else could legally take the vehicle to a safer location." *Thompson v. Village of Monee*, 110 F. Supp. 3d 826, 848-49 (N.D. Ill. 2015) (collecting cases).

11

Here, the Court initially rejects the argument that Defendant Kelley is entitled to summary judgment based on the statute of limitations. Section 1983 is subject to a two-year statute of limitations. *See Olson v. Cross*, ---F. Supp. 3d----, 2024 WL 361200, *13 (N.D. Ill. Jan. 30, 2024) (citing *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998); 735 ILCS 5/13-202). Defendant Kelley was not added as a party to the case until the filing of the Amended Complaint on June 21, 2023, but the entire case was stayed due to the state criminal proceedings between February 6, 2019, and June 30, 2022. (Docs. 36 & 80). The Court agrees with Plaintiff that the time for filing claims against Defendant Kelley during the stay was tolled. *See* 735 ILCS 5/13-216 ("When the commencement of an action is stayed by injunction, order of a court, or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action."); *James v. Buckhalter*, No. 11-cv-4418, 2022 WL 103711, *1-3 (N.D. Ill. Jan. 10, 2022) (finding, in § 1983 case, "[b]ecause the Court stayed all proceedings in this case pending resolution of James' criminal case…[§] 13-216 tolled the statute of limitations for the entirety of the stay, making James' claims against Welch and Zuber timely," notwithstanding the fact that James already knew their identities); *White v. Williams*, No. 94-cv-3836, 1997 WL 261357, *2 (N.D. Ill. May 8, 1997) ("Unlike the doctrine of equitable tolling, the 'stay of action' statute does not require a demonstration of diligence.").

Further, it is clear to the Court that the substantive analysis is multilayered. As to the inventory search of Gaddis's car, including of the notebook by Defendant Kelley, the evidence indicates Defendant Oglesby had no personal involvement. *See Gonzalez*, 40 F.4th at 828; *Taylor*, 999 F.3d at 493. In other words, as far as the actual inventory search

of Gaddis's notebook goes, the evidence undisputedly indicates that it was Defendant Kelley, not Defendant Oglesby, who conducted the inventory search at issue in this case.

As to Defendant Kelley, the evidence also indicates he comported with constitutional principles. He did not need a warrant or probable cause because Gaddis was lawfully arrested for trespassing on DeMattei's property and, as an incident to that arrest, the inventory search was conducted pursuant to the written procedures of the Williamson County Sheriff's Office. *See Cherry*, 436 F.3d at 772; *Davis*, 627 F. Supp. 3d at 992; *compare Cartwright*, 630 F.3d at 614-15 (finding police department's "comprehensive" impoundment policy was sufficiently standardized, the district court committed no clear error in finding the officers followed that policy, and the officers' actions were reasonable); *with Reed*, 319 F. Supp. 3d at 1121-22 (holding a search could not be justified as a reasonable inventory search where neither the owner nor authorized driver of a car were under arrest, the police officers deviated from the county towing policies and procedures, there was no evidence of any completed forms to show an inventory search was done, and the inventory search was a pretext); (Docs. 102-1, pgs. 22, 24-25; 102-3; 102-4, pgs. 9-10, 13). Here, the inventory search comported with its purpose of producing a list of the items, including a notebook or miscellaneous papers, contained in the car. *See Travis*, 2022 WL 832096, *5; *see also U.S. v. Andrews*, 22 F.3d 1328, 1335 (5th Cir. 1994) ("Cash, credit cards, negotiable instruments, and any number of other items could be hidden between the pages of a notebook, and could give rise to a claim against the city if lost."). Similarly, the impoundment of the car was also legal. (Doc. 102-4, pg. 14). In short, after Gaddis was arrested, the car could not be left to sit in DeMattei's driveway.

13

*See Cartwright*, 630 F.3d at 614; *Thompson*, 110 F. Supp. 3d at 848-49; *see also Clinton*, 591 F.3d at 972 (finding the towing and inventorying of a car was lawful where, *inter alia*, the police officers followed a standard police procedure after the driver and passenger of the car were arrested on suspicion of stealing a firearm, leaving no one to drive the car).

Even if Defendant Kelley observed DeMattei's name written in plain view as an incident to the inventory search of the notebook, the Court cannot conclude that was unreasonable, as necessary to be unconstitutional. *See Ambriz-Villa*, 482 F. Supp. 3d at 781-82; *Mapp v. Warden*, 531 F.2d 1167, 1172 (2d Cir. 1976) (finding rent receipts were properly seized in plain view where, *inter alia*, their incriminating nature was apparent after a suspicious name "naturally caught…the attention" of the police in the course of an otherwise lawful search); *U.S. v. Shakur*, Nos. 82-cr-312 & 84-cr-220, 1988 WL 9944, *1 (S.D. N.Y. Feb. 1, 1988) (noting, under plain view doctrine, "[a] 'limited inspection' of a suspect item is permissible; this includes perusal of documents."); *U.S. v. Silva*, 714 F. Supp. 693, 695 (S.D. N.Y. 1989) ("Courts have almost unanimously concluded that an officer may cursorily inspect books, documents, or ledgers to determine whether they constitute seizable evidence, even in the absence of probable cause."). To thumb through the pages of the notebook as part of the inventory search, Defendant Kelley, to some extent, had to view the notebook's pages. If Defendant Kelley were expected to avoid seeing what was right in front of him, then it would have made little sense to conduct the inventory search at all. *See U.S. v. Ochs*, 595 F.2d 1247, 1257 n. 8 (2d Cir. 1979) ("As this court has recently stated, '[i]t would be absurd to require an investigator to be oblivious to that which would be apparent to anyone else with normal powers of observation.' "). Therefore, to the

extent the evidence shows Defendant Kelley searched the pages of the notebook to find DeMattei's name, rather than the mere cracks between its pages, the Court finds that search was reasonable and not violative of the Fourth Amendment. *Compare Andrews*, 22 F.3d at 1334-36 (holding, in case involving  patrolman's "page-by-page" search of a notebook as part of an inventory search, defendant did not demonstrate violations of his Fourth Amendment rights where, *inter alia*, the inventory search was pursuant to normal and standardized procedures, the patrolman's testimony showed the police agency required the completion of inventory searches and inventory forms to protect against claims of lost property, the opening of the notebook to determine whether there were valuables contained between its pages was consistent with the police agency's policy and procedures, and the procedures sufficiently regulated the discretion of its officers); *with U.S. v. Santos*, 961 F. Supp. 71, 74 (S.D. N.Y. 1997) (finding "affirmative, investigatory act" of reading the defendant's books and letters in order to discover incriminating evidence "overstepped the limits of the inventory search" where the agent "did so not because her eye happened to fall upon clearly printed words on the face of inventoried items[] or because she was attempting to determine the nature of an object to be inventoried").

Now, Plaintiff states, "[i]f that was all there was to this case, i.e., [an] inventory [of a] vehicle, summary judgment should be granted in…[Defendants'] favor." (Doc. 104-1, pg. 1). The gray area, of course, relates to whether either Defendant shared the notebook with DeMattei upon learning it referenced his name. Such an action would be separate from the limited purpose of the inventory search, even if Defendant Kelley, at a minimum, only observed DeMattei's name in plain view in the notebook. And, in light

15

of DeMattei's deposition testimony, questions related to whether Defendant Oglesby or Defendant Kelley provided the notebook to DeMattei for a review undisputedly exist.

It must be remembered, however, that DeMattei was not on duty for the City of Marion at the time of the incident involving Gaddis. DeMattei, as a private citizen, requested police assistance when Gaddis refused to leave his property. It was ultimately determined that DeMattei was the victim of a trespass to real property. DeMattei and Ward restrained Gaddis on the ground until Defendants arrived on scene; however, the evidentiary record otherwise indicates DeMattei was not performing police functions at the time of the incident. Indeed, if DeMattei reviewed the notebook, as Plaintiff alleges, the evidence indicates that was done after one of the Defendants brought the notebook to DeMattei in his private residence. Since a private citizen cannot violate the Fourth Amendment, and DeMattei was a private citizen at the time of the incident, the Court concludes Defendants did not violate the Fourth Amended by facilitating a review, *i.e.*, a second search, of the notebook by DeMattei after the inventory search. *See U.S. v. Hudson*, 86 F.4th 806, 810 (7th Cir. 2023) ("The [Fourth] Amendment protects citizens against unreasonable searches and seizures by the government; it does not apply to searches or seizures conducted by private individuals, no matter how unreasonable."); *U.S. v. Couch*, 378 F. Supp. 2d 50, 55 (N.D. N.Y. 2005) ("Numerous courts addressing the issue have held that a search by an off-duty law enforcement officer in his or her capacity as a private citizen, and not as a law enforcement officer, does not violate the prohibition against unreasonable searches and seizures."). Notably, the evidence does not indicate that DeMattei in any way acted at the request of or to assist Defendants after their arrival on

16

scene. *See Hudson*, 86 F.4th at 810. Indeed, Plaintiff's allegations indicate the only result was DeMattei's personal decision to seek an order of protection against Gaddis. *See id*.

In any event, the Court finds Defendants are entitled to qualified immunity, which involves a question of law for the Court, not a jury, to decide. *Smith v. Finkley*, 10 F.4th 725, 742 (7th Cir. 2021) (quoting *Riccardo v. Rausch*, 375 F.3d 521, 526 (7th Cir. 2004); *Warlick v. Cross*, 969 F.2d 303, 305 (7th Cir. 1992)). That doctrine shields public officials from civil liability unless (1) their actions violated a constitutional right that (2) was clearly established at the time of the violation. *Doxtator v. O'Brien*, 39 F.4th 852, 863 (7th Cir. 2022) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014)). A right is "clearly established" only "if its 'contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' " *Id.* (quoting *Plumhoff*, 572 U.S. at 778); *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) ("Put slightly differently, a right is clearly established only if '*every* reasonable official would have understood that *what he is doing* violates that right.' ") (Emphasis added and in original). Existing legal precedent must place the constitutional question "beyond debate." *Doxtator*, 39 F.4th at 863 (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)). "Beyond debate," in turn, means clearly established law shares specific details with the facts of the case. *Id.* (citing *White v. Pauly*, 580 U.S. 73, 137 (2017)); *see also Smith*, 10 F.4th at 742 (stating the requirement that a clearly established right be defined with specificity "means '[w]e analyze whether precedent squarely governs the facts at issue, mindful that we cannot define clearly established law at too high a level of generality.' "). It is "[o]nly in the 'rare "obvious case" ' " that the unlawfulness of an officer's conduct will be

sufficiently clear without precedent that addresses like circumstances. *Doxtator*, 39 F.4th at 863 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)). It is by design that this sounds like a high bar to clear. *See id.* (quoting *Lopez v. Sheriff of Cook Cnty.*, 993 F.3d 981, 988 (7th Cir. 2021)). The doctrine of qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Lopez*, 993 F.3d at 988 (quoting *Malley v. Briggs*, 475 U.S. at 341); *accord Doxtator*, 39 F.4th at 863; *Campbell*, 936 F.3d at 546.

Here, Plaintiff addresses Defendants' invocation of qualified immunity, without any legal citation, in four sentences in her Response to the Motion for Summary Judgment. (Doc. 104-1, pg. 5). This is woefully inadequate, especially when considering "to defeat a defendant's assertion of qualified immunity plaintiffs need not produce a case directly on point, [but] defining the applicable law 'at a high level of generality' simply will not do.' " *Doxtator*, 39 F.4th at 863 (quoting *Ashcroft*, 563 U.S. at 741); *see also Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000) (noting, if there is a statutory or constitutional violation, it remains the plaintiff's burden to show the right was clearly established when violated). In short, Plaintiff presented no case on qualified immunity, let alone a case that is directly on point or of high generality. *See De v. City of Chicago*, 912 F. Supp. 2d 709, 733 (N.D. Ill. 2012) (recognizing, if a party opposing summary judgment fails to inform the trial judge of the reasons why summary judgment should not be entered through the development of arguments in a memorandum of law, the arguments may be deemed waived, such that the nonmovant will lose the motion). Regardless, as discussed in relation to the above authorities, the Court finds Plaintiff has not demonstrated Defendants violated Gaddis's clearly established Fourth Amendment

rights, such that any reasonable police officer would have known, "beyond debate," that his or her actions rose to the level of constitutional violations. *See Doxtator*, 39 F.4th at 863.

For these reasons, Defendants are **GRANTED** summary judgment on Count I.

### C. Defendants' Alleged Trespass to Chattels under Illinois Law (Count II)

Defendants argue summary judgment is proper on Count II for many of the same reasons as Count I. (Doc. 102, pg. 10). They also suggest Plaintiff's claim relates to the notebook entries, not the notebook itself, so "this tort simply does not apply as compared to a physical item, possession, or animal." (Doc. 102, pg. 10). That is, "the private thoughts and writings…[are] not the type of tangible personal property for which a trespass to chattels tort applies." (Doc. 102, pg. 11). Defendants argue Plaintiff cannot prove a trespass to chattels, as there is no evidence Gaddis was dispossessed of the notebook. (Doc. 102, pgs. 5, 10-11). The notebook was left in the car during the impoundment, and it was recovered at the same time as the car. (Doc. 102, pgs. 5, 10). There is also allegedly no evidence Defendants altered or diminished the value of the notebook. (Doc. 102, pgs. 5-6, 10-11). Any review of the notebook, to "determine if there was anything of pecuniary value contained therein," was allegedly pursuant to a lawful inventory search. (Doc. 102, pgs. 6). Finally, Defendants argue this claim is time barred as to Defendant Kelley or they are immune under Illinois law. *See* 745 ILCS 5/2-201-204; (Doc. 102, pgs. 6, 11-16).

In response, Plaintiff appears to rely upon the same arguments as those relating to Count I. Also, Plaintiff argues no claim is time barred due to the prior stay, as only "[a] total of 631 days have run where there was no stay in effect." (Doc. 104-1, pgs. 5-6).

A trespass to chattels is a tort that redresses the unauthorized use of or intermeddling with physical property. *Barnes v. Northwest Repossession, LLC*, 210 F. Supp. 3d 954, 971 (N.D. Ill. 2016) (quoting *Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, 82 F. Supp. 3d 844, 859 (C.D. Ill. 2015), *aff'd*, 810 F.3d 1075 (7th Cir. 2016)). Under Illinois law, it occurs when there is an injury to or interference with the possession of property. *Id.* (quoting *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 761 (N.D. Ill. 2015)); *accord Zissu v. IH2 Property Illinois, L.P.*, 157 F. Supp. 3d 797, 803 (N.D. Ill. 2016). "A trespass to a chattel 'may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.' " *Barnes*, 210 F. Supp. 3d at 971 (citing *Frazier v. U.S. Bank Nat. Ass'n*, No. 11-cv-8775, 2013 WL 1337263, *11 (N.D. Ill. March 29, 2013); Restatement (Second) of Torts § 217 (1965)); *accord Zissu*, 157 F. Supp. 3d at 803; *see also Ogbolumani v. Young*, 2015 IL App (1st) 141930-U, ¶ 32 (noting, under § 221 of the Restatement (Second) of Torts, an intentional dispossession of a chattel may occur through a taking without consent, a taking by fraud or duress, a bar to access, destruction while in another's possession, or a taking into the custody of the law). Harm to the property, or a diminution in its quality, condition, or value, as a result of the defendant's actions, may result in liability. *Barnes*, 210 F. Supp. 3d at 971 (quoting *Smith*, 143 F. Supp. 3d at 761); *see also Loman v. Freeman*, 375 Ill. App. 3d 445, 458 (2006) (noting, under §§ 278 and 892A of the Restatement (Second) of Torts, " '[o]ne who exercises any privilege to commit an act which would otherwise be a trespass to a chattel…is subject to liability for any harm to the interest of another in the chattel caused by dealing with it in a manner which is in excess of the privilege….' In short, '[i]f the actor exceeds the consent, it is not

effective for the excess.' "). This tort has generally been limited to intentional interference, which occurs if an act is done (1) to use or intermeddle with the chattel or (2) with knowledge the intermeddling will, to a substantial certainty, result from the act. *Barnes*, 210 F. Supp. 3d at 971 (quoting Restatement (Second) of Torts § 217, cmts. b, c (1965)).

Initially, the Court accepts the argument that Count II is time-barred as to Defendant Kelley. Section 8-101 of the Local Governmental and Governmental Employee's Tort Immunity Act states: "[n]o civil action other than an action described in subsection (b)," which is inapplicable here, "may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 735 ILCS 10/8-101. Unlike the § 1983 claim in Count I, which has a 2-year statute of limitations, the trespass to chattels tort under Illinois law has a 1-year statute of limitations. *See id.*; *Olson*, 2024 WL 361200, *13. Plaintiff concedes that "[a] total of 631 days have run where there was no stay in effect…[so] *[t]he two year* statute of limitations has not run." (Doc. 104-1, pg. 6) (Emphasis added). Count II may not be maintained against Defendant Kelley.

Even if this were not so, Count II would fail on the merits as to both Defendant Oglesby and Defendant Kelley for the same reasons. Initially, the Court tends to agree with Defendants that Plaintiff's argument tends to center on the alleged intermeddling with Gaddis's private thoughts and writings, as opposed to his physical notebook, such that the tort is not implicated. However, even if Plaintiff could maintain such a cause of action, it is obvious to the Court that Plaintiff was not dispossessed of the notebook in a manner contemplated by the case law. The notebook was part of a permissible inventory

21

search following Gaddis's arrest for trespass to real property. There is no accusation that Defendants failed to return the notebook following the impoundment of Gaddis's car. Also, even assuming that Defendants shared the notebook with DeMattei, there is no accusation that Gaddis suffered an alteration or diminution in the value of the notebook after the incident. Therefore, in short, the Court finds there was no injury to or interference with the possession of the notebook. *See Barnes*, 210 F. Supp. 3d at 971.

Alternatively, "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. "Willful and wanton conduct," by extension, "means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. With respect to the intentional tort of trespass to chattels, the record is devoid of evidence that Gaddis's notebook was either physically harmed or that Defendants "actual or deliberate intention" was to cause harm. Similarly, Defendants are not liable for a trespass to chattels by DeMattei, as "a public employee…acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS 10/2-204. As such, Defendants are immune from liability, providing an independent basis for a grant of summary judgment.

For these reasons, Defendants are **GRANTED** summary judgment on Count II.

### D. Defendants' Alleged Spoliation of Evidence

Finally, Plaintiff alleges Defendant Oglesby testified in the related state criminal case that the "computer in his squad car," despite being operational, "was not available

because he and…[another officer] had made several attempts to download the [video] file but they had been unsuccessful." (Doc. 104-1, pg. 6). The video file would purportedly show who searched Gaddis's car, who took the notebook, whether the notebook was read, and whether the notebook was removed for a review by DeMattei. (Doc. 104-1, pgs. 6, 8). Gaddis attempted to have an expert retrieve the computer files but, upon reaching out to the prosecution, he was told "the computer system had malfunctioned and was not available." (Doc. 104-1, pg. 7). Gaddis was allegedly told that there was no video of the incident, and it was believed that the computer system no longer existed. (Doc. 104-1, pgs. 7-8). For these reasons, Plaintiff indicates it would be appropriate for the Court to read an adverse inference instruction to a potential jury. (Docs. 104-1, pg. 7; 109, pg. 2).

In Reply, Defendants state: "there is no concrete evidence that if any dash camera footage had been preserved during the criminal matter, that the position of Oglesby's squad [car] and dash camera was such that it would have captured any event or action in controversy." (Doc. 107-1, pg. 3). Defendants also view any argument the video "was intentionally destroyed by some unidentified individual to hide adverse information harmful to" their case as speculative and without factual basis, especially in light of Defendant Oglesby's testimony at the hearing in the criminal case. (Doc. 107-1, pg. 3).

Now, the "[c]ase law from…within the Seventh Circuit recognizes that Rule 37(e) provides 'the sole source to address the loss of relevant ESI that was required to be preserved but was not because reasonable steps were not taken." *Pable v. Chicago Transit Auth.*, No. 19-cv-7868, 2023 WL 2333414, *18 (N.D. Ill. March 2, 2023). Therefore, while Plaintiff does not explicitly invoke Rule 37(e)(2)(B) when requesting an adverse inference

instruction in her Response to the Motion for Summary Judgment, the Court must

proceed under that Rule. *See id.*; (Doc. 104-1, pgs. 6-8).[4]

Rule 37(e) provides as follows:

(e) Failure to Preserve Electronically Stored Information. If electronically
stored information that should have been preserved in the anticipation or
conduct of litigation is lost because a party failed to take reasonable steps
to preserve it, and it cannot be restored or replaced through additional
discovery, the court:

(1) upon finding prejudice to another party from loss of the
information, may order measures no greater than necessary to cure
the prejudice; or

(2) only upon finding that the party acted with the intent to deprive
another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the
party;

(B) instruct the jury that it may or must presume the
information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e) (Emphasis in original omitted); *see also Hamilton v. Oswego Cmty Unit

School District 308*, No. 20-cv-0292, 2022 WL 580783, *2 (N.D. Ill. Feb. 25, 2022) (noting

violations of Rule 37(e) occur if the lost information is (1) electronically stored, (2) existing

during anticipated or actual litigation, (3) subject to a duty to preserve in light of its

relevance, (4) lost due to a party's failure to take reasonable steps of preservation, and

(5) beyond restoration or replacement through additional discovery procedures); *Pable*,

---

[4]Notably, though, Plaintiff states in her Response to Defendants' Motion for Leave to File a Reply
that they "are correct in reading [her] response to request a discovery-type sanction for destruction of the
dashboard camera program," *i.e.*, an adverse inference instruction under Rule 37(e)(2)(B). (Doc. 109, pg. 2).

2023 WL 2333414, *17) (noting Rule 37(e)'s threshold requirements and stating, if they are

met, the Court must assess prejudice and/or whether there was an intent to deprive).

As to intent under Rule 37(e)(2), which is difficult for a party to prove and for a

court to find, it is almost always proven with circumstantial evidence. *Hollis v. CEVA*

*Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 623 (7th Cir. 2022) (collecting cases). To apply here,

the video footage must be "deleted…with 'the intent to deprive another party of the

information's use in the litigation,' " meaning there must be "actual evidence of intent."

*Freidig v. Target Corp.*, 329 F.R.D. 199, 210 (W.D. Wisc. 2018); *see also Schmalz v. Village of*

*North Riverside*, No. 13-cv-8012, 2018 WL 1704109, *4 (N.D. Ill. March 23, 2018) (noting

"[a] finding of negligence, or even gross negligence, would not satisfy the intent

requirement under subsection (e)(2))"). If there is evidence of an intent to deprive, the

Court may order an adverse inference instruction under Rule 37(e)(2)(B). *Pable*, 2023 WL

2333414, *17 (quoting *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839,

958 (C.D. Ill. 2021)); *see also Schmalz*, 2018 WL 1704109, *4) (noting an adverse inference

instruction "requires a finding of intent" and is "one of the most severe sanctions").

Here, Defendant Oglesby purportedly knew of Gaddis's desire to view the video

of the incident. (Doc. 102-1, pg. 26). However, pursuant to Plaintiff's own argument,

Defendant Oglesby testified in the state criminal proceedings that he and another officer

attempted to download the footage, but they were unsuccessful in doing so. Likewise,

upon reaching out to the state prosecution about an expert examination, Gaddis was

allegedly given a similar explanation, namely, that the computer system containing the

dash camera video had malfunctioned and no longer existed. (Doc. 104-1, pgs. 6-7). The

Court cannot conclude from these arguments that Defendants failed to take reasonable steps to preserve the computer system and/or dash camera video, which is a threshold requirement under Rule 37(e). Alternatively, the Court has not been directed to any evidence that Defendants actually intended to deprive Gaddis or Plaintiff of the evidentiary value of the computer system and/or dash camera video, as necessary for an adverse inference instruction under Rule 37(e)(2)(B). *See Freidig*, 329 F.R.D. at 210 (finding the plaintiff did not adduce evidence of the defendant's intent, despite having the burden of proof, requiring a denial of the request for sanctions under Rule 37(e)(2)). The Court understands that requirement is usually proven by circumstantial evidence. However, without more than is presented on the current record, the Court is left with mere speculation about whether either Defendant, or some unidentified third-person, spoliated the computer system containing the dash camera footage, despite a duty to take reasonable steps of preservation, with an intent to deprive. Thus, even assuming the other Rule 37(e)(2) requirements are met, the Court finds Plaintiff is not entitled to that relief.

## III. CONCLUSION

As explained above, Defendants Motion for Leave to File an Untimely Reply (Doc. 107) and Motion for Summary Judgment (Doc. 102) are **GRANTED**. The Clerk of the Court is **DIRECTED** to terminate all pending deadlines and hearings before entering judgment for Defendants and against Plaintiff. All other motions are **DENIED as moot**.

**SO ORDERED.**

Dated: April 9, 2024

s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge